Christopher P Beall (*pro hac vice*)
Robert Penchina (*pro hac vice*)
LEVINE SULLIVAN KOCH & SCHULZ LLP
Email: cbeall@lskslaw.com;
       rpenchina@lskslaw.com
321 West 44th Street, Suite 510
New York, NY 10036
212-850-6113
Fax: 212-850-6299

*Attorneys for John Wiley & Sons, Inc.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| TOM BEAN,<br><br>    Plaintiff,<br><br>vs.<br><br>JOHN WILEY & SONS, INC.,<br><br>    Defendant. | Case No.: 11-CV-08028 (FJM)<br><br>**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND PERMANENT INJUNCTION** |

Defendant John Wiley & Sons, Inc. ("Wiley") submits this Response in opposition to Plaintiff's Motion for Partial Summary Judgment and Permanent Injunction and Memorandum of Law ("Plaintiff's Motion") (Doc. #100, Jan. 13, 2012), filed by Plaintiff Tom Bean ("Bean") in his effort to secure a finding of liability on Bean's copyright claim with respect to twenty-one (21) textbook titles published by Wiley between 1995 and 2007, and also a permanent injunction against any future use by Wiley of the photographs of Bean's that were displayed in those books. This Opposition is supported by the accompanying declarations of Lisa Suarez and Christopher P. Beall, and the separate response by Wiley to Bean's statement of material facts.

**Introduction**

Having previously failed to obtain a preliminary injunction under Rule 65 in this case,[1] Bean now seeks to achieve what he could not obtain before, this time through the mechanism of a summary judgment motion seeking a permanent injunction regarding twenty-six (26) of the nearly three dozen stock photographs pleaded in the First Amended Complaint. However, just as Bean could not previously establish irreparable harm in the context of his request for interlocutory relief, here too Bean cannot establish either the irreparable harm or the inadequacy of monetary relief necessary for a permanent injunction. Indeed, the question of monetary relief remains to be tried. And at that trial, the Court will be provided with the full picture of the parties' relationship and the extent to which the invoice restrictions that Bean relies upon for his claims of astronomical damages were not essential terms of the parties' understandings. The facts at trial will establish that Bean's licensing practices, with Wiley and others, consistently granted permission for the kind of use that Wiley made of Bean's photos, and he did so for merely modest incremental additional payments. The bottom line here is that Bean has constructed a "federal case" out of minor variances between the limits in his invoices and Wiley's actual use. Such circumstances, under the custom and practice in the industry, are not momentous occasions of willful infringement, but rather merely instances where publishers and photographers work out additional payments to cover the additional usage that was not anticipated at the time of the initial invoice. In this light, a light that requires a full trial on the facts, Bean simply is not entitled to a permanent injunction, regardless of any finding of technical infringement by Wiley.

Moreover, even on the subsidiary issue of liability with respect to the twenty-six photos at issue in this motion, Bean's claims of copyright infringement are time-

---

[1] On August 3, 2011, at a scheduling conference before the Court, the Hon. Frederick J. Martone indicated for the Court that he was not inclined at that time to grant the plaintiff's motion for preliminary injunction. (Tr. at 6:11-17.) At that point, plaintiff's counsel made an oral motion to withdraw the motion for preliminary injunction, which withdrawal was approved. (Tr. at 7:16-8:2.)

{00479060;v5}                               2

barred.  He filed suit more than three years after he and his attorneys had reason to inquire into the circumstances of Wiley's use of Bean's photos.  Indeed, Bean is chargeable with the knowledge of his attorneys, and those attorneys had, contemporaneously with their representation of Bean, been pursuing infringement claims against Wiley on behalf of another photographer client with respect to three of the *very same books* as are at issue in this case.  At a minimum, the knowledge of Bean and his attorneys with respect to Wiley's potential infringement of Bean's copyrights, and their subsequent delay in bringing this suit, are more than sufficient to create a genuine issue of material fact with regard to whether Bean's copyright claims are time-barred.

In light of the genuine factual issues pertaining to both the liability and remedy questions, Plaintiff's Motion should be denied and this matter should proceed to trial.

### **Factual Background**

Plaintiff's Motion arises from a posture in which Wiley has forthrightly conceded that its uses of the photos specified in Plaintiff's Motion did not strictly comply in certain instances with some of the restrictions inserted into Bean's invoices.  Those concessions, however, do not begin to address the full breadth of the context of the parties' relationship and the nature or extent of what little harm may have accrued to Bean from any variation between Wiley's usage in its textbooks versus the technical limitations in Bean's invoices.

As Bean himself made clear during his deposition in this case, he regularly and routinely licensed his stock photos on a non-exclusive basis for small, pre-set increments of payment, and he never once would have refused a license to Wiley for the extent of use that Wiley actually made of his photos.  (*See* Def.'s Resp. to Pl.'s Separate Statement of Undisputed Material Facts and Def.'s Statement of Additional Material Facts, ¶¶ 25-31 (herein, "Wiley's Facts").)  Indeed, in many cases where Wiley's actual use of a photo fell below Bean's minimum pricing – albeit where Wiley's usage was beyond the technical limitation in Bean's invoice – Bean's standard

and persistently applied price list would not have required any additional payment by Wiley. Thus, for example, in those instances where Wiley may have exceeded an invoice restriction of, say, 25,000 copies by printing more than that number but less than 40,000 copies, Bean's price for Wiley's actual use would have been exactly the same as what Wiley actually did pay. (Wiley Facts, ¶¶ 27-28.) This idiosyncrasy arises from the fact that Bean's minimum invoice price was for up to 40,000 copies. (Wiley's Facts, ¶ 27.) Thus, even a technically "infringing" use by Wiley that fell below Bean's 40,000 minimum caused Bean no harm because he was paid for the full amount that he would otherwise have charged if the license had specified 40,000 copies. (Wiley's Facts, ¶¶ 27-28.)

Alternatively, where a restriction in one of Bean's invoices imposed a distribution limitation to only North America, but Wiley distributed its textbooks to countries outside of North America, Bean's standard pricing practice would have only required an additional payment of a surcharge on the underlying fee for permission to distribute throughout the world. (Wiley Facts, ¶ 29.)

In other words, a full development of the facts at trial will show that Bean never once refused to grant Wiley numerical print runs, geographical distribution rights, or digital permissions in whatever scope and for whatever volume that Wiley anticipated it would need. (Wiley Facts, ¶ 31.) Rather, Bean's stock photo business was one simply of setting modest, incremental units of payment for fungible rights. In this case, therefore, one of the central issues that remains to be tried is the question now of what value Bean is entitled to today for those past occasions when Wiley's actual use later exceeded what Wiley had anticipated at the time of its request for an invoice from Bean.

Separately, and in connection with Bean's request for permanent injunctive relief, Wiley has made clear throughout this case that it has suspended any new printings of the books that include the Bean photos at issue here. Wiley also has established that it has removed the photos of Bean's that previously were included in

1  ebook versions of the titles in this case without permission, such that there is no longer
2  any Internet distribution of Bean's photos in circumstances where Bean did not grant
3  permission for ebook distribution. The only remaining issue is the question of Wiley's
4  exhaustion of its small remaining inventory of previously printed copies of the titles
5  that had Bean's photos. For that inventory of previously printed books, an injunction
6  prohibiting Wiley from fulfilling its customers' orders, at least until new editions of
7  the books can be published, would significantly undermine Wiley's ongoing
8  relationships with its customers.

9  Importantly, though, even apart from the remedy question of monetary damages
10 or injunctive relief, Plaintiff's Motion here ignores Wiley's statute of limitation
11 defense that necessarily obviates even the liability issue. On that question, the record
12 shows that Bean began discussions with his current counsel at Harmon & Seidman,
13 LLP in the midst of those attorneys' representation of a fellow photographer's then-
14 ongoing dispute with Wiley. (Wiley Facts, ¶¶ 18-19.) That dispute between Wiley
15 and David Hiser in 2006 and running into early 2007, when Bean first engaged
16 Harmon & Seidman, involved Hiser's allegations of unauthorized use in three of
17 Wiley's books, remarkably three of the books that Bean has placed in issue in this
18 case. (Wiley Facts, ¶¶ 20-22.) Thus, long before the three-year window of the
19 limitations period running back from Bean's February 23, 2011 filing date in this case,
20 Bean's attorneys – who were his agents for purposes of precisely these issues of
21 infringement of his copyrights in his stock photos – were already in pursuit of
22 analogous claims against Wiley. (Wiley Facts, ¶¶ 15-24.) As a result, even though
23 Bean professes to have been unaware of any reason to sue Wiley in 2007, and indeed
24 he had no more in 2011 than the same "suspicions" based on "conversation with my
25 attorneys" in 2007, the facts are that Bean's attorneys were well aware of a potential
26 claim for unauthorized use of Bean's photos in Wiley's books. (Wiley Facts, ¶¶ 15-
27 16.)
28

## **Argument**

### I. BEAN'S COPYRIGHT CLAIMS ARE TIME-BARRED

As discussed above, Bean and his attorney had clear notice of their potential claims against Wiley in 2007, if not earlier. Indeed, Bean's attorneys already were pursuing a claim against Wiley for copyright infringement on behalf of another client with respect to three of the very same books at issue in this case. And, such notice accrued to Bean and his attorneys long before the applicable limitations period for Bean's copyright claims.

Under the Copyright Act, "[n]o civil action shall be maintained . . . unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). "A cause of action for copyright infringement accrues when one has knowledge of a violation or is chargeable with such knowledge." *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994); *see also Kourtis v. Cameron*, 419 F.3d 989, 999 (9th Cir. 2005) (holding that an infringement claim accrues once a plaintiff discovers or should have discovered that a violation has occurred), *overruled on other grounds, Taylor v. Sturgell*, 553 U.S. 880 (2008); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 706 (9th Cir. 2004) (holding that the Copyright Act's limitations period begins to run when the copyright owner discovers, or reasonably could have discovered, the infringement).

In addition, the case law establishes that a plaintiff is to be charged with inquiry notice of his alleged copyright injury when "a reasonably prudent person in the plaintiff's shoes would have discovered (that is, would have acquired an awareness of) the putative infringement." *Warren Freedenfeld Assocs., Inc. v. McTigue*, 531 F.3d 38, 44 (1st Cir. 2008). This "discovery" rule imposes a test under which the limitation period begins to run when the plaintiff has "enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the [claim.]" *Pincay v. Andrews*, 238 F.3d 1106, 1109-10 (9th Cir. 2001); *see also Stone*

*v. Williams*, 970 F.2d 1043, 1048-49 (2d Cir. 1992) (holding that when the "duty of inquiry ha[s] arisen, plaintiff is charged with whatever knowledge an inquiry would have revealed").  Once a plaintiff is put on notice as to one potential infringement of his rights, the plaintiff then has "a duty to investigate whether other 'products' contained the same infringement." *Fahmy v. Jay-Z*, --- F.Supp.2d ----, 2011 WL 6150644, at *5 (C.D. Cal. Dec. 9, 2011); *see also Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515, 1521 (9th Cir. 1983) ("[E]quity will impute to a litigant knowledge of facts that would have been revealed by reasonably required further investigation."); *Kepner-Tregoe, Inc. v. Exec. Dev., Inc.*, 79 F. Supp. 2d 474, 488 (D.N.J. 1999) (a previous infringement charge "places a duty on [plaintiff] to monitor [defendant's] products" because "'[a] reasonable [copyright owner], motivated by his interest in recovering for and preventing infringement, keeps abreast of the activities of those in his field of endeavor.'" (quoting *Wanlass v. Gen. Elec. Co.*, 148 F.3d 1334, 1339 (Fed. Cir. 1998))).

Thus, because Bean brought suit against Wiley on February 23, 2011, his claims are time-barred if Bean had inquiry notice, or actual notice, of unauthorized use by Wiley prior to February 23, 2008.

In that vein, the Court must bear in mind that under universally recognized principles of agency law, "when an agent is employed to represent a principal with respect to a given matter and acquires knowledge material to that representation, for purposes of assessing the principal's rights and liabilities vis-à-vis a third person, the agent's knowledge is imputed to the principal." *Veal v. Geraci*, 23 F.3d 722, 725 (2d Cir. 1994) (citing Restatement (Second) of Agency §§ 9(3), 268, 272, 275 (1958)); *see also Garcia v. I.N.S.*, 222 F.3d 1208, 1209 (9th Cir. 2000) (holding that "It is a longstanding principle that in 'our system of representative litigation . . . each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.'" (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 634 (1962) (internal citation and quotations omitted));

*Ringgold Corp. v. Worrall*, 880 F.2d 1138, 1141-42 (9th Cir. 1989) (holding that parties "are considered to have notice of all facts known to their lawyer-agent"); *Mattivi Bros. Leasing Inc. v. Ecopath Indus. LLC*, No. 10-0049-PHX-DGC, 2011 WL 2784609, at *2 (D. Ariz. July 14, 2011) (same).[2]

Numerous courts have held that this doctrine of imputed knowledge from an attorney to his client is particularly pertinent to the application of a limitations period. *See, e.g.*, *Bell v. Brown*, 557 F.2d 849, 856 & n.59 (D.C. Cir. 1977) (noting that in the ordinary case, a jurisdictional time "period starts when counsel for a complaining employee receives notice because a party is deemed to have 'notice of all facts, notice of which can be charged upon the attorney'" (citing *Smith v. Ayer*, 101 U.S. 320, 326 (1879)); *Leal v. Computershare*, No. 2:10-cv-00033-LDG, 2010 WL 4038609, at *6 (D. Nev. Sept. 28, 2010) (holding that the moment when the plaintiff's attorney learned that his client's shares had been liquidated started the clock for the discovery rule of accrual of claims); *Arlington Funding Servs., Inc. v. Geigel*, No. 2008–007, 2009 WL 357944, at *6 (V.I. Feb. 9, 2009) ("Therefore, as a general rule, the statute of limitations on a client's action will begin to run when the client's attorney knew or should have known about the circumstances giving rise to that claim, even if the client lacks knowledge of the potential claim.").

Thus, Bean must be charged with the knowledge of the attorneys he engaged at Harmon & Seidman, which he did "six months or so" before he filed his first copyright infringement suit against a textbook publisher on July 26, 2007. In that context, the following circumstances demonstrate the full breadth of Harmon & Seidman's, and

---

[2] Even previously acquired information related to the subject-matter of the attorney's representation may be imputed to the attorney's client. See *Chicagoland Vending, Inc. v. Parkside Ctr.*, 454 S.E.2d 456, 458 (Ga. 1995) ("[P]reviously acquired knowledge or notice must be that which the agent, in dealing with a subsequent principal, then had in mind, or which he had acquired so recently as to reasonably warrant the assumption that he still retained it." (quotation omitted)); *Pee Dee State Bank v. Prosser*, 367 S.E.2d 708, 714 (S.C. Ct. App. 1988), *overruled on other grounds*, *United Carolina Bank v. Caroprop, Ltd.* 446 S.E.2d 415 (S.C. 1994) (charging principal with knowledge that agent had previously acquired before relationship when it "can reasonably be said to have been in the mind of the agent when acting for the principal or where he acquired it so recently as to raise the presumption he still retained it in his mind").

thus Bean's, awareness of a claim against Wiley:

Bean's attorneys had filed at least a dozen lawsuits against book publishers based only on "information and belief" allegations that asserted a systemic pattern of widespread infringement by publishers who failed to comply with license limits. (Wiley Facts, ¶¶ 15-16.) When Bean's attorneys filed their "information and belief" accusations against Wiley on February 23, 2011, alleging a willful scheme to defraud Bean, their allegations were no more detailed and no better informed than the virtually identical allegations made in Bean's first lawsuit against a textbook publisher, McDougal Littell, on July 26, 2007. (Wiley Facts, ¶¶ 7-8.) Those similarly situated allegations against McDougal Littell in 2007 show that Bean could well have filed precisely the same allegations against Wiley in 2007, rather than taking nearly four more years to submit this case on February 23, 2011.

Bean himself asserted at his deposition in this case that he had no more than "suspicions" based upon his conversations with his attorneys before filing his first copyright infringement suit in 2007, and that again prior to February 23, 2011, when he sued Wiley, he had no more knowledge than the "suspicions" he had been given through his "conversation with my attorney." (Wiley Facts, ¶¶ 6, 8-9, 12, 14; *see also* Beall Decl., Ex. 1 (Bean Dep., 99:20-100:2).) Thus, Bean sued Wiley in 2011 with no more personal knowledge than he had in 2007.

And finally, Bean's attorneys at Harmon & Seidman had issued a formal demand notice to Wiley on behalf of David Hiser in a letter dated December 8, 2006, around the same time that Mr. Hiser and Bean were themselves consulting about whether Bean might hire Harmon & Seidman to represent him in copyright matters. (Wiley Facts, ¶¶ 19-20.) This demand letter by Harmon & Seidman pertained to three textbooks, the *exact* same books in which Bean himself also had licensed photos to Wiley: *Introducing Physical Geography*, 3e, by Strahler; *Physical Geography: Science and Systems*, 3e, by Strahler; and *Introducing Physical Geography*, 4e, by Strahler. (Wiley Facts, ¶¶ 20, 22.) In that demand letter, Harmon & Seidman

indicated that they were then already aware of Wiley's unauthorized creations of at least 55,200 copies of those books. (Wiley Facts, ¶ 21.) Such knowledge would lead any reasonable person in Bean's shoes to understand that he too should investigate whether Wiley had similarly made unauthorized use of his photos. *See Veal*, 23 F.3d at 725; *Fahmy*, 2011 WL 6150644, at *5.

In light of the foregoing, therefore, there is at least a genuine issue of material fact with respect to the application of the Copyright Act's statute of limitations to bar Bean's claims against Wiley for copyright infringements occurring more than three years before the filing date of this case, that is, for infringements before February 23, 2008. *See Fahmy*, 2011 WL 6150644, at *5.

## II.  BEAN HAS FAILED TO ESTABLISH AN ENTITLEMENT TO PERMANENT INJUNCTIVE RELIEF

In his rush to judgment, Bean seeks to leapfrog to the issuance of a permanent injunction before any trial as to damages. This gambit is a transparent effort to ratchet up settlement pressure. More importantly, it ignores the fundamental point that any copyright infringement, if there is any, is entirely compensable, if at all, with monetary damages. Indeed, there are substantial and pervasive issues of material fact that remain to be resolved with respect to Bean's assertions on the question of injunctive relief.

### A.  Under *eBay*, Bean Must Establish The Fact Of Likely Future Infringement, Irreparable Harm And Inadequacy Of Money Damages On A Going-Forward Basis

In the wake of the sea-change in equitable relief in intellectual property cases wrought by the Supreme Court's decision in *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006), the case law in this circuit has undergone a radical evolution, discharging mountains of prior rulings in which courts saw fit to issue injunctive relief merely upon a finding of infringement. *See, e.g.*, *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 998 (9th Cir. 2011) (per curium) (overruling prior case law with regard to decisions relying upon a presumption of irreparable harm:

"[O]ur long-standing precedent . . . as stated in *Elvis Presley* [*Enterprises, Inc. v. Passport Video*, 349 F.3d 622 (9th Cir. 2003)] and relied on by the district court, has been effectively overruled.  In other words, '*Elvis* has left the building.'").  Today, the standard for issuance of a permanent injunction under the Copyright Act, 17 U.S.C. § 502(a), requires the plaintiff to establish the following elements:

     1. Future infringement by the defendant is "likely";

     2. In the absence of a permanent injunction, the plaintiff will suffer "irreparable harm";

     3. The available monetary remedies for those likely future infringements will be inadequate to compensate the plaintiff for the new harm;

     4. The balance of hardships between the parties depending on the presence or absence of prospective injunctive relief favors the plaintiff; and,

     5. The public's interest in the matter will not be disserved by the issuance of the requested injunction.

*See eBay*, 547 U.S. at 391; *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Flexible Lifeline Sys.*, 654 F.3d at 994; *Presidio Components Inc. v. Am. Technical Ceramics Corp.*, 723 F. Supp. 2d 1284, 1335 (S.D. Cal. 2010).

    In connection with these elements, it is of course now settled law that no presumptions of irreparable harm, of any kind, may be relied upon.  *See AFL Telecomms. LLC v. SurplusEZ.com, Inc.*, No.11-1086-PHX-DGC, 2011 WL 5547855, at *2 (D. Ariz. Nov. 15, 2011) ("The Ninth Circuit's analysis in *Flexible Lifeline*, as well as the Supreme Court cases on which *Flexible Lifeline* relied, however, suggests a lack of favor with ***any*** presumption of irreparable harm when issuing preliminary or permanent injunctions." (emphasis in original)).  In addition, an assertion of a "[s]peculative injury does not constitute irreparable injury."  *Goldie's Bookstore, Inc. v. Super. Ct.*, 739 F.2d 466, 472 (9th Cir. 1984), cited in *AFL Telecomms. LLC v.*

*SurplusEQ.com, Inc.*, No. CV 11-01086, 2011 WL 4102214, at *4 (D. Ariz. Sept. 14, 2011), *reconsideration denied*, 2011 WL 5547855.  And, a finding of irreparable injury may not be established based solely on the statutory right to exclude, an argument that is foreclosed by the *eBay* decision.  *See Presidio Components*, 723 F. Supp. 2d at 1337; *accord IMX, Inc. v. LendingTree, LLC*, 469 F. Supp. 2d 203, 225 (D. Del. 2007) (noting that "infringing one's right to exclude, alone, is insufficient to warrant injunctive relief").[3]

Finally, the case law makes clear that the mere prospect of potential future litigation between the parties is not sufficient to warrant issuance of a permanent injunction, at least not without a showing of both irreparable harm from likely future infringements and inadequacy in the prospective money damages.  *See Conceptus, Inc. v. Hologic, Inc.*, No. 09-02280-WHA, 2012 WL 44064, at *2-3 (N.D. Cal. Jan. 9, 2012) (denying motion for permanent injunction after a jury verdict finding patent infringement; rejecting plaintiff's argument that the prospect of future litigation would be irreparable; finding future money damages would be adequate to remedy any future harm); *Presidio Components Inc.*, 723 F. Supp. 2d at 1338 ("[T]he Court is not persuaded by Presidio's argument that awarding it damages instead of an injunction would essentially force Presidio to grant a license to ATC . . . . If this was the unequivocal rule in every case, then the Court would be forced to grant every request for a permanent injunction whenever the patentee refused to license the claimed invention.").

---

[3] Bean's citation to the decision in *Mortgage Market Guide, LLC v. Freedman Report, LLC*, No. 06-140-FLW, 2008 WL 2991570, at *43 (D.N.J. July 28, 2008), for the proposition that irreparable harm may be found in the loss of the "exclusive rights" under the Copyright Act, must be rejected.  The decision in *Mortgage Market Guide* fundamentally fails to acknowledge the import of the Supreme Court's ruling in *eBay*, in which the Court directly rejected the Federal Circuit's prior law holding that a loss of the "exclusive rights" under the Patent Act constitutes an irreparable injury.  *See eBay*, 547 U.S. at 392 (rejecting the Federal Circuit's doctrine that loss of the "statutory right to exclude" necessarily constitutes an irreparable injury); *see also Presidio Components Inc. v. Am. Technical Ceramics Corp.*, 723 F. Supp. 2d 1284, 1337 (S.D. Cal. 2010) (same).

### B. Bean Has Failed To Establish The Absence Of Genuine Issues Of Fact Regarding The Elements For A Permanent Injunction

Bean's request for permanent injunctive relief suffers from all of the ills that the decisions in *eBay*, *Flexible Lifeline Systems*, and *Presidio Components* decry. Indeed, Bean attempts to translate his factually suspect assertion of a likelihood of future infringements into a finding of irreparable harm solely on the strength of the purported loss of the "the right to exclude." *See* Pl.'s M. at 9. This notion simply is not the law any longer after *eBay*.

Rather, the Supreme Court in *eBay* made clear that the mere fact of a future infringement is not enough, in and of itself, to warrant the imposition of a permanent injunction; instead, the plaintiff must establish specific facts showing that any injuries flowing from the likely future infringements are "irreparable." *See eBay*, 547 U.S. at 392; *Presidio Components*, 723 F. Supp. at 1337. More is required than merely a non-specific argument about the loss of the ability to refuse to license the plaintiff's work. *See Conceptus*, 2012 WL 44064, at *2-3. And in any event, Bean's factual predicate for this argument is groundless because Wiley has made clear that it has no intention of using Bean's photographs in the future. (Wiley Facts, ¶¶ 19, 20, 22.) Nor has Bean come forward with any actual direct evidence of new printing of Bean's photographs since the initiation of this case, but rather only with vague assertions about the possibility of such new uses. *See AFL Telecomms.*, 2011 WL 4102214, at *4 (speculative assertions of vague potential injuries are insufficient).

Bean's only half-hearted attempt to point to a specific future injury that he contends is irreparable is his notion that the value of his library of stock photos, in the event of a transfer to a different photo licensing agency, would be diminished in the absence of a permanent injunction. *See* Pl.'s M. at 10. Bean has provided no basis other than his say so for this proposition. (Bean Decl., ¶ 12.) Moreover, his assertion ignores the fact that he has historically and routinely granted non-exclusive licenses

{00479060;v5}                                     13

for use of his photos to all manner of third parties. (Wiley Facts, ¶ 33.) As a result, there is already a pattern of widespread use of his photos. There simply is no need for a permanent injunction in order to facilitate a transfer of his stock photo library to another licensor, or to bolster the value of that library in such a transfer, a value which, of course, is highly calculable in monetary terms.

In contrast to this limp assertion of irreparable harm, the record here shows a consistent and ongoing pattern of actual licensing of the very photos for which Bean seeks an injunction. (Bean Decl., Ex. 2.) That pattern of licensing demonstrates that any infringement is fully compensable with money damages, and as a result, no harm can be said to be "irreparable." *See Presidio Components*, 723 F. Supp. at 1337.

Bean's additional contention about the difficulty of identifying future infringements by Wiley is also factually flawed. Wiley has made clear that it does not intend to use Bean's photographs in any new books. (Wiley Facts, ¶¶ 19, 20, 22, 23.) Wiley also has indicated that its on-hand inventory of previously printed books is being depleted with no intention to reprint any version of those books with copies of Bean's photos. (*Id.*) In light of these circumstances, Bean's ability to identify any future infringement is self-evident. He needs only to come across a single instance of a new use of one of the photos at issue in this motion, and he will know that this new use is unauthorized.

Bean's arguments with respect to the balance of hardships and the public interest again rely, without actually saying so, on an assumption of future infringement and a presumption of harm from such infringement. *See* Pl.'s M. at 12-13. In this regard, Bean simply assumes that he will be harmed by the absence of a permanent injunction without showing how such harm will arise. In contrast, Wiley has made shown that a permanent injunction preventing it from exhausting its current inventory will cause significant harm to its customer relations. (Suarez Decl., ¶ 9.) Those customers who have included the remaining Wiley textbooks in their courses would be caught flat-footed by an injunction requiring Wiley to halt its distribution, requiring

them to revisit course plans, syllabi, teaching notes, labs, and exams.  (Suarez Decl., ¶¶ 10-11.)  Preventing the distribution of Wiley's remaining inventory would cause substantial dislocation in the academic programs across the country that continue to rely on the remaining inventory of these books.  (Suarez Decl., ¶ 12.)

In light of this analysis, Bean has not established as a matter of law an entitlement to a pre-trial permanent injunction. *See, e.g.*, *Psihoyos v. John Wiley & Sons, Inc.*, No. 11-1416-JSR, 2011 WL 4634172, at *3 (S.D.N.Y. Oct. 4, 2011) ("[T]he Court finds that enjoining the defendant from selling its existing inventory of five-hundred page academic textbooks, when each is alleged to contain no more than two to three photographs that may or may not have been properly registered by the plaintiff, would impose a severe hardship on the defendant and constitute an inappropriate use of the Court's equitable powers." (citing *Silverstein v. Putnam Inc.*, 368 F.3d 77, 84 (2d Cir. 2004) ("[A]ny protectible [sic] interest [plaintiff] may have would be so slight that it cannot properly be enforced by a preliminary or permanent injunction.")); *Love v. Kwitny*, 772 F. Supp. 1367, 1375 (S.D.N.Y. 1991) ("When the injurious consequences to [holder's] copyright from continued circulation of [infringing] book are, if anything, '"trifling,"' no injunction is warranted.") (quotation omitted)).

## Conclusion

Based on the foregoing, the Court should deny Bean's motion for partial summary judgment and advance this matter to a full trial on the merits.

Respectfully submitted this __13th__ day of February, 2012.

By *s/ Christopher P. Beall*
Christopher P Beall (*pro hac vice*)
Robert Penchina (*pro hac vice*)
LEVINE SULLIVAN KOCH & SCHULZ LLP
Email: cbeall@lskslaw.com;
rpenchina@lskslaw.com
321 West 44th Street, Suite 510
New York, NY 10036
212-850-6113; Fax: 212-850-6299

David M. Andersen (AZ Bar No. 25309)
BACAL LAW GROUP, P.C.
E-mail:  david.andersen@bacalgroup.com
6991 East Camelback Road, Suite D-102
Scottsdale, Arizona  85251
(480) 245-6230; Fax: (480) 245-6231

Ashima Aggarwal (*pro hac vice*)
Joseph J. Barker (*pro hac vice*)
E-mail: aaggarwa@wiley.com;
jobarker@wiley.com
JOHN WILEY & SONS, INC.
111 River Street
Hoboken, New Jersey 07030
(201) 748-7862; Fax: (201) 748-6500

*Attorneys for Defendant John Wiley & Sons, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 13, 2012, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing, which automatically transmitted a Notice of Electronic Filing to the following CM/ECF registrants who have entered appearances in this case:

Maurice Harmon
Harmon & Seidman LLC
The Pennsville School
533 Walnut Drive
Northampton, PA 18067
maurice@harmonseidman.com

Christopher Seidman
Harmon & Seidman LLC
101 South Third Street, Suite 265
Grand Junction, CO 81501
chris@harmonseidman.com

Amanda L. Bruss
Harmon & Seidman LLC
8010 E. 29th Avenue
Denver, CO 80238
amanda@harmonseidman.com

*s/ Christopher P. Beall*

{00479060;v5}                           17