**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tom Bean, | CV 11-08028-PCT-FJM |
| Plaintiff, | **ORDER** |
| vs. | |
| John Wiley & Sons, Inc., | |
| Defendant. | |

The court has before it plaintiff's motion for partial summary judgment (doc. 100) and separate statement of facts ("PSOF") (doc. 100-3), defendant's response (doc. 110), defendant's separate statement of facts ("DSOF") and statement of additional material facts (doc. 111), and plaintiff's reply (doc. 117).[1] We also have defendant's motion to enforce the protective order and to confirm confidentiality designation of certain financial information (doc. 103), plaintiff's response (doc. 107), and defendant's reply (doc. 109). Finally, we have plaintiff's notice regarding the lodging of Exhibit 1 (filed in support of his motion for partial summary judgment) under seal (doc. 101). Defendant responded by filing a motion to seal (doc. 106).

---

[1] On March 22, 2012 we granted plaintiff's unopposed motion to file two declarations in support of his reply (doc. 119).

**I**

The facts are largely undisputed. Plaintiff is a professional photographer. He created all twenty-six photographs ("the Photographs") at issue in this motion.[2] Each photograph is registered with the United States Copyright Office. Plaintiff issued licenses to defendant over a number of years to publish the Photographs in academic textbooks. Plaintiff did not authorize defendant to use the Photographs beyond the explicit use grants in each license, and defendant did not seek license renewals or permission to use the Photographs beyond the scope of the licenses. Defendant printed more than the licensed number of copies of some of the Photographs in a number of textbooks without plaintiff's permission. See PSOF ¶¶ 8-9 (listing textbooks). In addition, defendant published some of the Photographs beyond the licensed geographic distribution area without plaintiff's permission. Id. ¶ 10 (listing

---

[2]The photographs listed in Exhibits A and B to plaintiff's motion are: (1) Alluvial Fan, Black Mountains, Death Valley National Park, CA; (2) Antelope Island, White Rock Bay, Great Salt Lake, UT; (3) Braided Stream Channel of the Chitina River, Wrangell Mountains, AK; (4) City Dump on Permafrost Soils, Kotzebue, AK; (5) Comb Ridge, w/ strata of monocline and San Juan River, Mexican Hat, UT; (6) Desert Pavement, KOFA National Wildlife Refuge, AZ; (7) El Yunque Rainforest, Bromeliads, Caribbean National Forest, PR; (8) Eroded Limestone near Vinales, Pinar del Rio, Cuba; (9) Exposed Rock Layers, Rapley Monocline near Mexican Hat, UT; (10) Fault Breccia, Grapevine Mts. Of Death Valley National Park, CA; (11) Fossil Dinosaur Tracks, Painted Desert, Cameron, AZ; (12) Glacial kame, near Campbellsport, WI; (13) Hogback Ridges, Grand Staircase-Escalante National Monument, UT; (14) Mangroves on Banks, Isle of Dominica, West Indies; (15) Oblique Aerial View of a Drumlin Field, WI; (16) Passive Solar Home with Trombe Walls, Flagstaff, AZ; (17) Ponderosa pine forest after thinning, Coconino National Forest, Flagstaff, AZ; (18) Ponderosa pine forest before tree thinning, Coconino National Forest, Flagstaff, AZ; (19) Sagebrush, Moffat County, CO; (20) Sedimentary Rocks of Moenkopi Form, Wupatki, AZ; (21) Sonoran Desert in Spring after Dry Winter, Tonto, AZ; (22) Sonoran Desert in Spring after Wet Winter, Tonto, AZ; (23) Terminal Moraine & Outwash Plain, Langlade County, WI; (24) The Burren, Karst Topography, eroded limestone, Ireland; (25) Three-toed Dinosaur Tracks, Cameron, AZ; (26) Wahweap Marina, Glen Canyon National Recreation Area, near Page, AZ. PSOF ¶ 2. Although plaintiff lists "Flash Flood Following Thunderstorm" as one of the photographs, id. ¶ 2(k), this photograph does not appear in either Exhibit A or Exhibit B. Additionally, plaintiff mistakenly listed the "Terminal Moraine & Outwash Plain" photograph twice. Id. ¶ 2(x), 2(y). Images of the Photographs are attached as Exhibits A and B to plaintiff's amended complaint (doc. 73).

textbooks). Defendant published some of the Photographs in four online "e-books" without plaintiff's permission. Id. ¶ 11 (listing e-books). Finally, defendant published some of the Photographs without a license. Id. ¶ 13 (listing textbooks).

Plaintiff presented evidence that defendant continues to use the Photographs in e-book formats and has not stopped distributing textbooks with Photographs that exceeded license limits. PSOF ¶¶ 14-18. Defendant disputes some of plaintiff's conclusions. First, it states that the Photographs have now been removed from the ebook publications. DSOF ¶¶ 12, 14, 16. Next, it avers that fifteen of the textbooks containing one or more of the Photographs are "out of print."[3] Id. ¶ 17. Defendant concedes that it continues to distribute its remaining printed copies of seven textbooks containing one or more of the Photographs.[4] Id. ¶ 18. However, defendant avers that it will not print any new copies of the Photographs in any of its textbooks, and will make no new use of plaintiff's photographs going forward. Id. ¶¶ 19, 20, 22.

Plaintiff retained his current lawyers in 2007 to litigate copyright infringement claims against the textbook division of publisher Houghton Mifflin Harcourt ("HMH"). Plaintiff's lawyers also represented photographer David Hiser in copyright litigation against defendant in 2006 and 2007. Defendant and Hiser stipulated to the entry of a protective order as a part of the Hiser litigation. Plaintiff retained his current lawyers in February 2010 to investigate whether defendant had infringed his copyrights and to represent him in any resulting

---

[3] The out of print titles are: Biology, Understanding Life, 1e by Alters; Blue Planet, 1e and 2e by Skinner; Dynamic Earth, 3e and 4e by Skinner; Environmental Science, 1e by Botkin/Keller; Environmental Science, 3e, 4e, 5e, and 6e by Botkin; Geography: Realms, Regions, and Concepts, 12e by deBlij & Muller; Introducing Physical Geography, 3e, by Strahler; Physical Geography of the Global Environment, 2e by deBlij & Muller; Physical Geography: Science and Systems, 1e and 2e by Strahler.

[4] These textbooks are: Dynamic Earth, 5e by Skinner; Environmental Science, 6e by Botkin; Environmental Science: Earth as a Living Planet, Canadian edition, by Botkin, Keller & Heathcote; Essential Environmental Science, 1e by Keller; Geology Today by Murck (licensed as "Home Planet, 1e"); Physical Geography: Science and Systems, 3e and 4e, by Strahler.

1  litigation.

2  Plaintiff's amended complaint seeks recovery for two claims: (1) copyright
3  infringement and (2) fraud. Plaintiff moves for partial summary judgment on the issue of
4  liability on each of the 108 claims of copyright infringement attached as Exhibits A and B
5  to his motion, and seeks a permanent injunction preventing defendant from future unlicensed
6  use of his photographs.

**II**

8  To prevail on a copyright infringement claim, plaintiff must establish "(1) ownership
9  of a valid copyright and (2) copying by the defendant of protect[i]ble elements of the work."
10 CDN Inc. v. Kapes, 197 F.3d 1256, 1258 (9th Cir. 1999). A licensee can infringe a copyright
11 by exceeding the scope of a license. S.O.S., Inc. v. Payday, Inc., 886 F.2d 1081, 1087 (9th
12 Cir. 1989). It is undisputed that plaintiff owns a valid copyright for each of the Photographs
13 and that defendant either used the Photographs beyond the scope of its licenses or without
14 any license at all. Thus, plaintiff argues that he is entitled to summary judgment on
15 defendant's liability for copyright infringement for all 108 claims that are the subject of this
16 motion.

17 Defendant argues, however, that genuine factual issues remain as to whether these
18 claims are time barred. Copyright infringement claims must be brought within three years
19 after a claim accrues. 17 U.S.C. § 507(b). "A cause of action for copyright infringement
20 accrues when one has knowledge of a violation or is chargeable with such knowledge."
21 Roley v. New World Pictures, Ltd., 19 F.3d 479, 481 (9th Cir. 1994); see also Polar Bear
22 Prods., Inc. v. Timex Corp., 384 F.3d 700, 705-06 (9th Cir. 2004) (statute of limitations issue
23 arises in copyright litigation when "plaintiff filed [his] copyright claim more than three years
24 after [he] discovered or should have discovered infringement"). Because plaintiff filed this
25 action on February 23, 2011, his claims are time barred if he knew or should have known of
26 defendant's infringement before February 23, 2008.

27 According to defendant, plaintiff's lawyers in this action were aware of plaintiff's
28 potential claim of infringement against defendant in 2007 for two reasons. First, by virtue

- 4 -

1  of plaintiff's 2007 litigation against HMH.  And second, by virtue of plaintiff's lawyers'
2  representation of David Hiser.  Plaintiff contends that, apart from his own deposition
3  testimony, all of the evidence that defendant submitted in support of these arguments is
4  inadmissible because it was not previously disclosed.  See Fed. R. Civ. P. 37(c)(1) (a party
5  who fails to disclose pursuant to Fed. R. Civ. P. 26 "is not allowed to use that information.
6  . . to supply evidence on a motion. . . unless the failure was substantially justified or is
7  harmless").  Plaintiff did not provide a copy of defendant's Rule 26 disclosures for our
8  review.  Even if all of the evidence presented by defendant was timely disclosed, defendant
9  has not presented a genuine issue of material fact as to whether any of plaintiff's claims are
10 time barred.

11         We are not persuaded that there is an issue of fact as to whether plaintiff's lawsuit
12 against HMH provided him with enough information to sue defendant in 2007.  Although
13 defendant complains that plaintiff's general allegations that textbook publishers systemically
14 exceeded licenses means that he "sued Wiley in 2011 with no more personal knowledge than
15 he had in 2007," Response to MPSJ at 9, defendant does not present any evidence from
16 which we can reasonably infer that plaintiff's knowledge of HMH's infringement alerted or
17 should have alerted him to evidence that defendant was exceeding its licenses.  Plaintiff
18 testified that around the time he initiated litigation against HMH, he was not suspicious that
19 other textbook publishers were exceeding his licenses.  DSOF, Beall Decl., ex. 1, Bean Dep.
20 98:9-98:20.  He cannot recall exactly when he became suspicious that defendant exceeded
21 his licenses.  Id. 100:9-100:17.  Defendant has not pointed to evidence that suggests
22 otherwise.

23         Defendant's second argument is troubling.  It contends that the information plaintiff's
24 lawyers gained about defendant's infringement of David Hiser's copyrights should be imputed
25 to plaintiff and should have put him on notice of his potential claims against defendant.
26 Agency law imputes knowledge of facts known by a lawyer to her client when the lawyer
27 acts within the scope of her authority.  See Morrow Crane Co. v. Affiliated FM Ins. Co., 885
28 F.2d 612, 614 (9th Cir. 1989) (principal is "deemed to know what [his] agent knows"

1  concerning matters where the agent has power to bind his principal).  Prior to 2010, plaintiff
2  had only retained his lawyers to litigate his copyright claims against HMH.  Thus, it seems
3  untenable that evidence of defendant's infringement of another client's work would be a
4  matter within the lawyers' scope of their representation of plaintiff in litigation against an
5  unrelated publisher.  Moreover, during the Hiser litigation defendant labeled documents it
6  produced during discovery detailing revenue and actual print quantities for textbooks
7  containing Hiser's photographs as "highly confidential - attorney's eyes only" pursuant to a
8  stipulated protective order.[5]  Under the protective order, the lawyers were prohibited from
9  disclosing the information to non-parties such as plaintiff.

Defendant asks in its motion to seal that we keep the kind of information relevant to determining whether it has exceeded a photographer's licenses shielded from public view, yet in the same breath asks that we impute the confidential knowledge plaintiff's lawyers learned in other copyright litigation to a non-party who happens to retain the same counsel. Defendant cannot have it both ways.  Imputing knowledge from plaintiff's lawyers in this context could create a situation where unknowing plaintiffs with potential copyright infringement claims against defendant retain plaintiff's lawyers at their peril. We decline to do so.

It is undisputed that defendant infringed plaintiff's copyrights on each occasion as listed in Exhibits A and B to plaintiff's motion for partial summary judgment. Defendant has not raised a genuine issue of material fact as to whether these claims are time barred. Accordingly, plaintiff is entitled to summary judgment on the issue of liability for each of the 108 instances of copyright infringement listed in Exhibits A and B.

**III**

Plaintiff asks that we enter a permanent injunction against defendant preventing it "from copying, displaying, distributing, advertising, promoting, selling or offering to sell

---

[5] Notably, this is the same kind of information presented in the exhibit that defendants wish to seal in this action.

- 6 -

1 Bean's Photographs or creating, obtaining and using substantially similar photographs in any
2 of the preceding ways." MPSJ at 7. The Copyright Act explicitly contemplates permanent
3 injunctions. 17 U.S.C. § 502(a). In order to obtain one, plaintiff must show

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

7 eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 391, 126 S. Ct. 1837, 1839 (2006); see also
8 Flexible Lifeline Sys., Inc. v. Precision Lift, Inc., 654 F.3d 989, 995 (9th Cir. 2011)
9 (explaining that eBay principles "apply equally to copyright infringement"). After eBay,
10 there is no longer a presumption of irreparable harm once liability for copyright infringement
11 has been established. Id. at 998 ("even in a copyright infringement case, the plaintiff must
12 demonstrate a likelihood of irreparable harm as a prerequisite for injunctive relief").

13 Plaintiff argues that a showing of both past infringement and a likelihood of future
14 infringement is sufficient to establish irreparable harm. See Designer Skin, LLC v. S & L
15 Vitamins, Inc., CV-05-3699-PHX-JAT, 2008 WL 4174882 at *4-*5 (D. Ariz. Sept. 5, 2008)
16 (explaining that this definition of irreparable harm recognizes the value of the right to
17 exclude without "run[ning] afoul of eBay's directives"). Even under this standard, however,
18 it is not clear that plaintiff has established a likelihood of future infringement. Plaintiff
19 presented evidence that defendant continues distributing textbooks that include images that
20 exceeded license limits, and that defendant continues to sell online ebooks that include
21 unlicensed images. PSOF ¶¶ 14, 16, 17, 18. Defendant submitted evidence suggesting that
22 plaintiff's photographs have been removed from its ebooks, DSOF ¶¶ 12, 14, 16, that fifteen
23 books containing the Photographs are now out of print and there will be no new copies
24 printed, Id. ¶ 17, and that defendant will not print any of plaintiff's photographs in new
25 books. Id. ¶¶ 19, 20, 22, 23. Thus, with respect to the ebooks, out of print textbooks, and
26 yet-to-be-printed textbooks, it is not clear whether there is a likelihood of future
27 infringement. Plaintiff has not shown irreparable harm as to these categories of materials.
28 And although he argues that he cannot assure prospective publishers or buyers that no other

1 uses of the Photographs will be made if he grants an exclusive license or sells exclusive
2 rights to his photographs, he has not presented any evidence of likely potential purchasers.
3 Without irreparable harm, a permanent injunction cannot be granted.

4 Defendant admits, however, that it continues to distribute its existing inventory of
5 seven textbooks. DSOF ¶ 18. Assuming that this constitutes irreparable harm, plaintiff still
6 needs to show that monetary remedies are inadequate to receive injunctive relief. Plaintiff
7 has not done so. His arguments, which focus on the difficulty of plaintiff discovering future
8 infringements, do not apply to these seven publications. Plaintiff already knows which of
9 his photographs appear in these seven titles. Plaintiff has not shown how the calculation of
10 money damages with respect to these seven textbooks - which have already been printed -
11 would be difficult, or that money damages cannot adequately compensate his injury.

12 In sum, the evidence at this stage does not support the entry of a permanent injunction.
13 Plaintiff's request for a pre-trial permanent injunction is denied.

**IV**

15 In support of his motion for partial summary judgment, plaintiff lodged one exhibit
16 under seal. This exhibit consists of charts summarizing the number of units defendant
17 printed and sold, along with its revenues, for a number of textbooks that include the
18 Photographs. Defendant designated this information as confidential pursuant to our
19 protective order (doc. 42, ex. 1). Although the parties conferred about the need to file the
20 exhibit under seal as required by LRCiv 5.6(d), they were unable to reach an agreement.
21 Accordingly, plaintiff filed a notice summarizing his position, and defendant responded by
22 filing a motion to seal. See id.

23 A party seeking to seal a judicial record must show "compelling reasons supported by
24 specific factual findings" that outweigh the presumption of public access to court documents.
25 Kamakana v. City & County of Honolulu, 447 F.3d 1172, 1178-79 (9th Cir. 2006). The
26 "strong presumption" of public access to court documents "applies fully to. . . motions for
27 summary judgment and related attachments." Id. at 1179. Plaintiff argues that some of the
28 information contained in the exhibit - the quantities of books printed - is publically available

and has previously been disclosed upon request to individuals over the telephone. Plaintiff contends that the public has an interest in accessing the exact numbers of copies printed and revenues, because this will enable other photographers to determine whether defendant also infringed their copyrights.

Defendant responds that public disclosure of its exact production and revenue would provide its competitors with information regarding its "market penetration, marketing priorities, sales distribution, overall success, and precise revenue results" that would harm its competitive position. Mot. to Seal at 2. In support, defendant refers to a declaration by Jane Berlin, VP of Production and Manufacturing for the Global Education business unit (doc. 103, ex. B). Ms. Berlin states that defendant has "never made public the financial information" contained in Exhibit 1, and that the "specific, actual sales revenue numbers, as well as the actual print-run numbers. . . are highly confidential." Id. at ¶ 4. She explains that each of the textbooks listed in the charts was printed for a specific market, and the information contained in the charts reveals how each book has performed in that market. This information, combined with exact sales figures, would "reveal[] the shape of the market for a particular textbook" and would allow competitors to "calibrate their own pricing and distribution practices" to undercut defendant. Id. at ¶¶ 5-6. Ms. Berlin also notes that defendant limits access to this information within the company on a "need to know" basis. Id. at ¶ 9.

Moreover, defendant argues that the issues of liability raised in plaintiff's motion for partial summary judgment do not depend at all on the numerical information contained in the exhibit's charts. Defendant notes that plaintiff publically filed defendant's admissions about its license compliance for each publication referenced in the charts. Defendant also attached a declaration from counsel to its motion to seal, admitting whether it used the Photographs without permission for each of the textbooks listed in the exhibit.

We conclude that defendant has shown compelling reasons to seal this exhibit that override the historic need for public access to the judicial record. In particular, defendant has demonstrated that the information contained in the charts is kept confidential not only from

1 the public, but also from its own employees. If the information about defendant's exact sales
2 and production numbers is released, its competitors can use these figures to defendant's
3 detriment. And the exact numbers of books published and amounts of revenue generated was
4 not relevant to our determination of the question before us on summary judgment - whether
5 defendant infringed plaintiff's copyrights. There is other evidence already in the public
6 record that reveals defendant's infringement. On balance, the harm to defendant from public
7 release of the exhibit outweighs the interest in access to evidence that is not crucial to the
8 public's understanding of our ruling on the issue of liability. The analysis may differ,
9 however, if this information is offered at trial on the issue of damages.

**V**

**IT IS ORDERED GRANTING IN PART** plaintiff's motion for partial summary judgment (doc. 100). Summary judgment is **GRANTED** to plaintiff on the issue of defendant's liability for copyright infringement for each instance listed in Exhibits A and B to plaintiff's motion. Plaintiff's request for a pre-trial permanent injunction is **DENIED**.

**IT IS ORDERED GRANTING** defendant's motion to seal (doc. 106). The Clerk shall file the lodged exhibit (doc. 102) under seal. **IT IS ORDERED DENYING** defendant's motion to reinforce the protective order on grounds of mootness (doc. 103).

DATED this 29th day of March, 2012.

_Frederick J. Martone_
Frederick J. Martone
United States District Judge